Good morning, your honors, and may it please the court. My name is Kelly Reynolds and I'm counsel for Petitioner Nelson Armando Torres in this matter. I intend to reserve five minutes for rebuttal. I'll do my best to pay attention to that. I want to thank the court for its focus order in this matter. The error in this case that the agency made is similar to the error in Velazquez-Samayoa. Petitioner posited two theories for why he would be tortured, and the immigration judge was therefore required to consider the aggregate risk posed by all sources. First, he fears that he will be tortured by gang members in El Salvador because he was a member of a Mexican gang in prison. He has tattoos to reflect that. All right, so counsel, let me focus in on that issue, including the case in the focus order. So the first thing is, when I look at what the, and this is a Bourbon case, so we look through, right? Okay, so when I look at what the IJ did, the IJ said that because respondent did not specify exactly which Mexican gang he was a member of while in prison, the court cannot determine whether this gang is considered a rival by gangs in El Salvador. So I have two questions about that. The first is, is there anything in the record that says that every Mexican gang causes some problem in El Salvador? What I see in the record, the only things that I could find, all the record references were rival gang, rival gang, rival gang. Is there anything to suggest that no matter which Mexican gang you're in, if somebody recognizes your tattoo, there's going to be a problem? Well, Mr. Torres did testify, and Mr. Torres spent 12 years in prison. And Mr. Torres was a member of a Mexican gang in prison. Which he did not identify. Well, he did identify it as associated with the Mexican mafia. But he didn't say which gang it was. Indeed. All right, so where in his testimony did he testify that any Mexican gang is going to problem in El Salvador? Your Honor, he testified that Salvadoran gang members, which whom he's familiar with in prison, consider Mexican gangs rivals. And that was stated on page 93. And then he also stated that MS-13 and 18th Street would consider someone involved in a Mexican gang a rival. I'm looking at 93 right now. Where? Just one second, Your Honor. I have it. 93, I believe, is where he testified, where he was stating it in- Because I don't see it there. He says, because while I was in prison, I was classified as a Mexican mafia associate, something that I was wrongly accused of, being I'm from El Salvador. And being classified as that, going to El Salvador, brings me a lot of harm. I'm sorry. I understand your argument, but I just don't see this as evidence that no matter which Mexican gang you're from, an El Salvadoran gang is going to target you. Well, he was identified as a Mexican mafia associate. So I understand that the evidence submitted by his trial counsel didn't establish that, but he testified that he was classified as a Mexican mafia associate. And he was wrongly accused of being, he's from El Salvador, but- I guess I understand your argument, but when I look at the documentary evidence submitted by your prior counsel, every single page I look at that covers this references rival gangs specifically. Correct, Your Honor. And then on page 157, he said- I have that in front of me too. Okay. Salvadorans don't take lightly that he was involved in a Mexican gang, whether it be MS-13 or 18th Street. I'm sorry, 157? I'm going 157 to 158. Sorry. It continues on 158. Okay. So his statement was Salvadorans don't take that lightly. Right. And then the next statement was whether it be MS-13 or 18th Street. Okay. I understand your argument. And I understand that there is no documentary evidence, but Mr. Torres was imprisoned for 12 years in the California prison system. And that's taken because he was imprisoned with other gang members. But going to the case, the way I read what the IJ said is, and whether the IJ is right or wrong, that's a different question. But what I read the IJ saying is, because we don't know who's a rival gang, I'm taking that out of the calculus completely. So why doesn't that satisfy the case the focus order is on, where there are two prongs of your client's argument? No question. I read the IJ taking this prong out of the calculus and then just saying the rest, it's kind of piling Pellion on ASA. It's like A plus B plus C plus D, and I just don't see them. Well, the IJ was required to determine whether, because of both sources, right? He fears- Well, if he takes one source out, as Judge Bennett has suggested, then he only has one source left. Well, I don't think that the IJ was correct in taking one source out. There was- That's just your argument then that it's just not correct? I'm sorry, Your Honor? Your argument is just then, it's not correct what he did, that he took one source out because there wasn't any evidence of it? Is that your argument? Well, there isn't no evidence of it. There is evidence that gangs are heavily tattooed. There is evidence that there are rival, I mean, within the State Department country report. Well, I didn't mean to interrupt Judge Bennett. He's perfectly good at taking up his-  That's just where I was. It seems to me that your argument is that the IJ evaluated your claim, if we're going to go like Velazquez, and I'm not going to say the last word because I'm from Idaho and I'll say it wrong. If I'm going to go like Velazquez, your argument is that the claim was evaluated as a chain of hypothetical events instead of assessing the aggregate risk of torture, right? Well, right. Because if you look at the English- I just want to make sure that's your argument, right? Well, then how do I come to that conclusion? If I look at what happens here at AR-68, the IJ explicitly states, the petitioner's aggregate risk of torture in El Salvador does not rise to the level necessary to issue cat relief. Yes. Specifically focusing on aggregate risk of torture, right? That's what he says. That's what he says, right? That's the way he starts his approach. Then he, in the next paragraphs, going all the way through about what he does, the next very paragraph, he describes all of the risk of torture that might happen. I mean, he goes in contrast to Cole. He goes through exactly what he's got to say. Unlike the tattoos, he goes through exactly what Judge Bennett's talked about. He says, furthermore, he's already in the process of removing the tattoos. He does exactly what I would do if I were looking at the aggregate risk of torture. It seems to me, and this is why I want you, it seems to me your only argument is that his next paragraph, where he starts out to sum up, takes away from that approach. Well, okay. So what we're talking about is where she actually, I believe it was- It's a she. Where she states that respondents or petitioners, aggregate risk of torture in El Salvador does not rise to the level alluded to in Cole, then she makes some mistakes, right? So Andrade versus Lynch. Andrade versus Lynch, she cites that to say that tattoos must be conspicuous, but Andrade versus Lynch was dealing with tattoos that were not gang related. And the response- It says, I think she's trying to say that in contrast to Cole, who had the tattoos as visible, these tattoos aren't visible. And therefore, it may not be of the same aggregate risk. That's what she's saying. Isn't that what she's saying? Well, the problem- I mean, the problem comes in that now my standard of review in assessing what she did, it's a substantial evidence review. Well, it's not because the other- Just a minute. It's not if she applies the wrong standard, that's de novo. But if she's applying a standard, whatever standard it is, it's substantial evidence. Correct, Your Honor. And I understand it's difficult to parse them out when it comes to this. Well, I don't think it's very difficult to parse them out because if in fact, she used the wrong standard, no question, I can go right in over the top of her and say, you did the wrong thing. But it seems as if she used the right standard, because I read what she said. And then I'm reading what she says to say that standard applies. And she can be given quite a bit of latitude in parsing out the evidence. Sure, Your Honor. And I understand the evidence. But if you look at her string of suppositions, her string of suppositions actually shows that she didn't consider the torture from the police, right? Because her string of suppositions is four suppositions, right? Number one is he will be targeted by gang members or- Corrupt police. Corrupt police, thank you. Police officers. And then three is that they will perceive him to be a rival gang member. So her string of suppositions doesn't at all review the evidence with regard to police, right? And the court's aware that there is a motion to reopen pending that in this case, that's why we filed a request to stay proceedings, because that's addressed in the changed circumstances. But on this record, she does mention evidence with regard to police, but she doesn't analyze them separately. What she does is she collapses them both. It seems to me that she does go at them both because she talks about what it is that is going to tip them off. And then she says, respondent doesn't present any experts or documentary evidence explaining how his tattoos would heighten the risk of torture, which were presented in Cole. No, I understand that your honor. Cole had expert evidence and Valeska Samayoa also had expert evidence, right? So she's trying then, as I understand it, to present the aggravated risk of torture. The only place that I see where your best argument is, is that when she goes to this sum up stuff. Right, exactly. But I guess here's the way, I mean, why is it when she has two different ideas that come for her, and she's supposed to say that the whole represent 50% of torture, that she wouldn't look at both standards, at both evidence, which is just normal, and also do the chain of hypothetical events as well, because she's got to see how good those are, because she has to add the two together to decide whether it meets the aggregate risk of torture. And therefore, I don't think that citing matter of JFF, or if you will, this string of impermissible suppositions, is that takes away from her approach of finding the aggregate risk, but adds to it because she's trying to find all of the risks that might be available and see if it goes over the 50%. Certainly, Your Honor, but in her string of suppositions, she fails to review the risk from police and security forces. Her string of suppositions identifies risk from police and security forces. And then number three in her string of suppositions basically says, and I'm down to 30 seconds, but basically says that he would be identified as a rival gang member. As far as I know, the police don't have rival gang members. Although she's talking about corrupt police. Right, but that still doesn't fit into police and security forces. So counsel, we've taken up a lot of your time with questions. We will give you two minutes for rebuttal. I appreciate that, Your Honor. Good morning. May it please the court. Alexa Perlmutter for the Attorney General. The court should deny this petition for review. There was no legal error here and no evidence compels a contrary conclusion to the one that the agency reached. I'd like to just start by kind of emphasizing what has been discussed, which is that it is the immigration judge's decision here that is before the court. And the court must read the immigration judge's decision holistically. Counsel, I think we do understand that. I guess to the questions that were being asked by my two colleagues here, Vazquez and Simeonov, can you tell me how, or if I'm looking at exactly the IJ decision, where does the IJ actually separate that analysis? And it is an actual analysis to address both theories. Can you point that out to me so that I know what you're saying? Right. Just to address Velazquez-Simeonov, so I'd just like to emphasize that it wasn't simply in that case that matter of JFF was cited. It was that the board addressed each of Velazquez's theories separately and found that each alone did not meet the requisite likelihood. The court found that the board impermissibly elevated petitioner's burden because he had to show- Well, I think you're answering a different question than I'm asking. My question to you is, point me where that analysis to the separate things, the separate theories are happening in the decision by the IJ. Because I, honestly, I can't find an analysis about that, or citations to any cases on that separately. So I think you're correct. What the IJ did here is address the two theories together, but in the context of the full IJ's decision in the prior, you know, two to three paragraphs- I do want to be clear. You are conceding that the IJ didn't analyze them separately? In this sentence, they're together. But if we look to the next sentence where the court specifically addresses the risk from state actors, these security forces, the court separately here acknowledges the risk posed by the security forces, but found the evidence insufficient to establish that, you know, petitioner met his burden in that regard. And the evidence supports that as it shows that torture is outlawed by the government. One sentence acknowledging that the existence of security forces have arrested and, in fact, killed suspects, that that sentence, the one sentence, is an analysis sufficient for us to review whether or not it was properly considered. That's your position? No, because perhaps if this one paragraph beginning with, to sum up, was the only portion of the immigration judge's decision, we might have an issue. But I do believe that these two paragraphs about the tattoos, they were not specifically addressing gang members only. Counsel, with regard to the gang members, would you agree with me that the IJ, when the IJ said that because respondent didn't specifically, didn't specify exactly which Mexican gang he was a member of while in prison, the court cannot determine whether this gang is considered a rival by gangs in El Salvador, is the IJ sorting out the gang member problem? I mean, I think that sentence certainly references, you know, what the fear would be with regard to Salvadoran gang members. And you're correct that there's nothing that supports that. Why would she include then in that sum up section gang members or corrupt police? If she's discounting that, why would she include that in her summary analysis? Well, I personally didn't read the IJ's decision to find absolutely no risk from one source. That's not how I read it. So I agree that this sum up here involves two sources, but it's just that combined in the aggregate, those two sources do not amount to the risk to meet petitioner's burden. And what the immigration judge here did, as the court knows, there's no kind of formula that has to be followed when assessing torture in the aggregate. And so the fact that the immigration judge proceeded by analyzing the tattoo as a risk factor, because that is his only individualized... Again, I guess it goes back to my original question. Where is it that there is an analysis of the police source? If there is, or are you taking the position that some of the questions that Judge Bennett is asking, which is that that has been discounted by the IJ? Are you conceding that there is no substantive analysis of the police source of the theory that's being presented? No, I do not concede that because we have sentences here. Petitioner did not present any experts or documentary evidence explaining how his tattoos would heighten his risk of torture. That goes to both sources. We have a discussion here that the words Southeast and Gardens, which petitioner specifically testified were the neighborhood that his mother lived in in the city, would not heighten his risk of torture, either from the police or the gang members. I don't see this tattoo paragraph to be limited to one source. It's discussing both sources and how the only risk factor that he put forward plays into both. Because what Velasquez-Stamayoa also made clear is that the agency can permissibly analyze sources of torture, but it can also analyze theories of torture or risk factors. So counsel, in the paragraph, the sum up paragraph, yes, the last sentence deals specifically only with the security forces. Is that right? That's correct. And this court has made clear in Ira Hetch and Martinez and in Park that discussing theories separately and then bookending the decision as here with generalized statements about overall risk does suffice to make clear that the aggregate risk was considered. There has to be a way to discuss these things, you know, and then sum them up in the aggregate. So I think that it's fair to point to certain sentences in certain language relating more to the gang members or more to the police. But that doesn't mean in the whole of this decision. I think what's clear is the immigration judge heard petitioner's claim, correctly identified what the risk factor he put forward was, correctly identified that he feared harm from both state actors and gang members, and holistically considered that. The immigration judge, unlike in Velazquez-Sanmayoa, did not require petitioner to show that multiple theories were going to be more likely than not. This decision, you know, reflects a reasoned consideration of what petitioner put forth. And what the documentary evidence shows, which is simply the State Department report and two articles about MS-13 in El Salvador and the 18th Street Gang being rivals, those country conditions, reports, and evidence do not compel a conclusion contrary to what is here. The worry that I have, Counselor, is that as the IJ starts the sum up paragraph, he says, to sum up respondents' fear of torture is based on a string of impermissible suppositions. As I read that, at the start of the chain of events analysis, which is what it's really about there, doesn't that mean, citing matter of JFF, which is a case definitely about that kind of stuff, doesn't that mean that the IJ just applied the chain events legal standard? And not the aggregate risk legal standard? And if not, why? No, I would point this court to Romero v. Bondi, and I'm acknowledging Judge Mendoza's dissent there, which I will address. In that case, the agency mentioned that it was considering the aggregate risk as here, and it cited to JFF. And it said that those two together suggested that petitioner, quote, failed to prove the hypothetical chain of events leading to torture from each individual source. So even in the aggregate could not show that he met his burden. And Judge Mendoza, you wrote in your dissent, you didn't appear to quibble with that analysis, but rather found that the agency erred by not discussing a third theory, which was these anti-gang vigilante groups, which is not an issue in this case. So I think what Romero shows is that an aggregate risk analysis is not inconsistent with matter of JFF. And here, again, if this was the only paragraph of the immigration judge's decision, if this was the only sentence of the decision, I agree that we would have more of an issue, but we have a well-reasoned decision where petitioner's risk factor is considered thoroughly. It's compared to this case in this court, which is kind of the seminal case on these tattoos. It's distinguished thoroughly in multiple places here. The immigration judge mentioned the aggregate risk at the end in light of the foregoing, the total foregoing paragraphs of this decision. I think that given this court's case law park you're ahead to Martinez, that makes clear that when a decision is bookended like this and puts forth reasoned analysis that is supported by the record, I don't think petitioner points to anything that, any aspect of his claim that was not considered. And to the extent that then it would just be kind of a magic words test as to, we can never cite JFF when there are multiple theories present, I think this court has already rejected that in Velasquez-Semillo itself by making clear that those are not internally inconsistent as long as the decision is bolstered as here with a reasoned analysis. So if the court doesn't have any questions, I'd just like to reiterate what this court said in Hernandez v. Garland, which is that we do not presume that the agency has disregarded the law, not to mention the basic principles of probability. I think this reasoned decision again, where all petitioners claimed fears were considered and were present, is supported by substantial evidence and the court should therefore deny the petition for review. Thank you. All right, thank you, counsel. Thank you, your honor, your owners, sorry. I would just, just in response to what she had, what opposing counsel had to say, the court, while the court cannot assume that the agency did not undergo a reasonable analysis, the court also cannot assume that the agency did. And the agency did not review, despite one sentence, the agency did not review the risk of torture that was from the police and security forces. And the agency, just like my opposing counsel, I do not agree that the agency or the immigration judge, I don't agree that she eliminated risk from gangs entirely, just simply because he did not identify his gang. He clearly identified it as himself as an associate of the Mexican mafia while in prison. And if she had just written off gangs entirely or the risk from gangs entirely, she wouldn't have stated it in the next section. So she did somewhat analyze the risk from gangs, but she just did not analyze the risk from police and security forces. All right. Thank you, counsel. Thank you. We thank counsel for their arguments. The case just argued is submitted.
judges: SMITH, BENNETT, MENDOZA